FILED
2018 Feb-12 AM 11:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PAMELA MICHELLE RAY, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 2:17-CV-74-KOB |
| NANCY A. BERRYHILL, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On September 4, 2013, the claimant, Pamela Michelle Ray, applied for a period of disability and disability insurance benefits under Title II, alleging that she became disabled on January 1, 2007, because of reflex sympathetic dystrophy, high blood pressure, poor reading comprehension skills, depression, high cholesterol, and low thyroid levels. (R. 183-89, 204, 244). After the Commissioner initially denied benefits to the claimant, she filed a timely request for a hearing; the Administrative Law Judge held a hearing on June 4, 2015. (R. 33-57).

In her decision dated August 5, 2015, the ALJ found that the claimant had no disability prior to September 30, 2011, her date last insured. (R. 21-32). The Appeals Council denied the claimant's request for review on December 16, 2016. (R 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court REVERSES and

1

REMANDS the decision of the Commissioner.

## II. ISSUE PRESENTED

Whether the ALJ erred as a matter of law in failing to consider Listing 12.05 (C) regarding the claimant's Full Scale IQ score of 61.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if she applied the correct legal standard and if substantial evidence supports her factual conclusions. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No … presumption of validity attaches to the [ALJ's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the ALJ's factual determinations *de novo* and will affirm those factual determinations supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 402 (1971).

The court must keep in mind that opinions, such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Whether the claimant meets a Listing and is entitled to Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence,

or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as substantial evidence in the record supports it.

The court must "scrutinize the record in its entirety to determine the reasonableness of the [ALJ]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To make this determination the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three,

leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

To establish eligibility for disability insurance benefits, the claimant must demonstrate that she was disabled on or before her date last insured. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Evidence that post-dates a claimant's date last insured "'may be relevant and properly considered if it bears upon the severity of the claimaint's condition before the expiration of his or her insured status.'" *Dye v. Colvin*, No. 6:15-cv-00237-VEH, 2016 WL 3997245 *6 (N.D. Ala. July 26, 2016) (quoting *Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *4 (M.D. Fla. May 8, 2008)) (emphasis omitted). The ALJ must adequately explain whether medical records dated after the date last insured have any bearing on the claimant's condition prior to her date last insured for the court to conduct a "meaningful review." *See Fitzgibbon v. Comm'r of Soc. Sec.*, No. 8:15-cv-706-T-JSS, 2017 WL 408475, at *6 (M.D. Fla. August 2, 2016) (citing *Owens v. Heckler*, 748 F.2d 1511, 1514-15 (11th Cir. 1984) ("A clear articulation of both fact and law is essential to our ability to conduct a review that is both limited and meaningful.")).

Regarding the claimant's intellectual disability claims, the Eleventh Circuit has determined that for a claimant to qualify for an intellectual disability under Listing 12.05,

> [a] claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22. Generally, the claimant meets the criteria for presumptive disability under section . . . 12.05(C) when the claimant presents a valid IQ score of 60 through 70 inclusive, and when the claimant presents evidence of an additional mental or physical impairment significantly affecting claimant's ability to work.

*Crayton v. Callahan*, 120 F.3d 1217, 1219-20 (11th Cir.1997); *see also Lowery v. Sullivan*, 979

F.2d 835, 837 (11th Cir. 1992); *Monroe v. Comm'r of Soc. Sec.*, 504 F. App'x 808 (11th Cir. 2013) (reversing the district court and holding that the claimant's impairments met Listing 12.05(C)). A claimant "'need not present evidence that she manifested deficits in adaptive functioning prior to the age of twenty-two, when she presented evidence of low IQ test results after the age of twenty-two.'" *Monroe*, 504 F. App'x at 810 (quoting *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001)).

## V. FACTS

The claimant was forty-four years old at the time of the ALJ's decision. (R 183). The claimant has a limited eighth grade education,[1] and has past relevant work experience as a personal attendant (a shampooer in a salon) and a cabinet painter. (R.45, 52). The claimant alleged that she is disabled because of reflex sympathetic dystrophy, high blood pressure, poor reading comprehension skills, depression, high cholesterol, and low thyroid levels. (R. 37, 46, 244).

---

[1] In its brief, the Commissioner argues that the claimant was inconsistent regarding her education level, citing to the record at page 437-38 to support that the claimant told Dr. Suk Fields at Alabama Psychiatric Services on February 4, 2009 that she graduated high school. However, the court is concerned that the medical evidence from Dr. Fields on that particular date is for another patient named "Pamela Ray." That record mentions "Pamela Ray's" blindness in her left eye and lists her age as forty-three in 2009; the claimant in this case has no medical record of blindness and could not have been forty-three years old in 2009. That February 4, 2009 record also indicates that "Pamela Ray" has one child in college and worked as an administrative assistant; the claimant in this case had one child that she put up for adoption and never worked as an administrative assistant. (R. 428).

However, other records from Alabama Psychiatric Services from 2009 through 2012 do seem to be those of the claimant in this case. (R. 439-49). Also, other records in this case from Alabama Psychiatric Services in 2012 and 2013 list the claimant's name as "Pamela Simmons," her married name as of 2011. (R. 261-29, 428). On remand, the ALJ should verify whether the records from Alabama Psychiatric Services are in fact records for this claimant before relying on them.

5

*Physical Limitations*

While the issue in this case deals primarily with the claimant's intellectual disability, as discussed below, the record contains medical evidence that the claimant suffered from the severe physical impairments of hypertension and reflex sympathetic dystrophy, a rare disorder of the sympathetic nervous system characterized by chronic, severe pain.[2] From 2009 through 2014, the claimant sought treatment at the BHC Hoover Primary Care and with Dr. John D. Morgan at the Metro West Medical Group for symptoms related to reflex sympathetic dystrophy in her left hand and for her hypertension. (R. 251-60. 295-318, 449-477). Dr. Christopher Reid at West Jefferson Internal Medicine treated the claimant from September 2012 through September 2014 for chronic pain related to her reflex sympathetic dystrophy and for her hypertension. (R. 273-94).

*Mental Limitations*

The record reflects that the claimant has a limited eighth grade education, but was not in special education classes. (R. 204-05, 244). The record in this case contains no school records for the claimant.

From February 2009 through September 2013, the claimant sought treatment at Alabama Psychiatric Services for depression, which doctors initially treated with 100 mg Zoloft and 300 mg Wellbutrin. Sometime after 2011, doctors changed her prescription to Xanax and Cymbalta for her depression, and added Neurontin to hep with her neuropathy in her left hand. (R. 437-

---

[2] https://rarediseases.org/rare-diseases/reflex-sympathetic-dystrophy-syndrome/.

48).[3]

During her interview with C. Craton at the Social Security Administration on October 3, 2013, the claimant was scattered in her thoughts; had a difficult time giving direct answers; and seemed nervous. (R. 202).

In his "Function Report-Adult-Third Party" dated October 12, 2013, the claimant's husband James Alred Simmons, Jr. reported that the claimant lays down a lot; hurts "most of the time"; takes all day to do household chores and has to stop several times a day; cannot handle a savings or checking account; stays home all the time; does not read well, and he has to read instructions to her; and gets confused when given spoken instructions and he has to repeat the instructions two to three times before she understands them. In her "Function Report-Adult," dated the same date as her husband's report, the claimant reiterated the same limitations as her husband. She further explained that she cannot write or spell well; has to get help from the bank teller to fill out the bank slips; gets very confused easily; and cannot understand directions and has to ask people to repeat them two or three times. (R. 214 -19, 233-41).

At the request of the Social Security Administration, Dr. Robert Estock completed a "Mental Residual Functional Capacity Assessment" of the claimant on November 26, 2013. After reviewing her records, Dr. Estock found that the claimant had moderate restrictions in her activities of daily living and in maintaining social functioning. He specifically noted that the claimant was *moderately limited* in her ability to understand, remember, and carry out detailed

---

[3] As discussed in Footnote 1, these records seem to be those of the claimant. However, the ALJ noted in her opinion that the claimant did not seek professional treatment for depression until 2012, but these records show otherwise. Again, on remand, the ALJ should verify whether these records are for the claimant in this case.

instructions; ability to work in coordination with or in proximity to others without being distracted by them; ability to complete a normal workday without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and ability to accept instructions and respond appropriately to criticism from supervisors.  Dr. Estock stated that the claimant could sustain attention and concentration for two-hour periods at a time to complete a normal workday at an acceptable pace and would be expected to miss one or two days of work per month because of her psychiatric symptoms.  (R. 121-25).

At the request of her attorney, the claimant saw clinical psychologist Dr. Alan Blotcky for a mental evaluation on October 24, 2014.  The claimant reported to Dr. Blotcky that she has a long history of chronic depression, which psychiatrists at Alabama Psychiatric Services treated with Cymbalta for four or five years; she has been off depression medication since 2013.  She also told Dr. Blotcky that she "quit school while repeating the eighth grade for the second time. She was a slow learner in regular classes. She made D's and F's."  She obtained a driver's license "via oral exam after multiple attempts."  (R. 428).

Dr. Blotcky administered the Wechsler Adult Intelligence Scale-IV IQ test that assessed the claimant with a Full Scale IQ score of 61.  Dr. Blotcky interpreted the test as demonstrating that the claimant has a verbal comprehension Index of 66, a perceptual reasoning Index of 65, a Working Memory Index of 69, and a Processing Speed Index of 71. Dr. Blotcky stated that the claimant's intellectual abilities fall in the "Mildly Retarded range"; that her "intellectual limitations are a lifelong problem"; and that she is unable to mange her financial affairs independently.  He noted that "Mrs. Ray was motivated during this exam," and that her "test

scores are valid."

Dr. Blotcky's diagnosis of the claimant was depressive disorder and mild mental retardation. He indicated that the claimant's "prognosis is very poor because of her mental retardation and depressive disorder." (R. 429-30).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for disability benefits, the claimant requested and received a hearing before an ALJ on June 4, 2015. At the hearing, the claimant testified that she is unable to work primarily because of pain and loss of feeling in her left hand because of reflex sympathetic dystrophy that started in 2007 but was diagnosed in 2013. Her left hand gets in a "C" position and "kind of closes up." She described the pain as a seven or eight out of ten on the pain scale even while on her pain medications and muscle relaxers, and indicated that the pain is sometimes a ten out of ten in the middle of the night and she wakes up crying. Because of her condition, she cannot write well, hold a glass, button her shirt, or press buttons with her left hand. (R. 37-41, 47).

The claimant testified that her pain medication Flexeral and muscle relaxer Zanafelx make her "groggy," and that her blood pressure medications make her sleepy. (R. 42).

Regarding her daily activities, the claimant stated that her husband does most of the household chores; she does not drive very much; and her husband does all the shopping. The claimant spends her day "mostly sitting" because of her depression; but she had not been treated for depression in three years because her "insurance doesn't pay 100%." She only completed eighth grade and had to repeat it twice. She cannot read well, and her husband has to read books to her. She can do some time tables in arithmetic, but that is all she can do. (R. 42-45).

9

A vocational expert, Dr. William Green, testified concerning the type and availability of jobs the claimant could perform. (R. 51-57). Dr. Green categorized the claimant's work history as a personal attendant, classified as light and unskilled; and a cabinet painter, classified as medium exertion and semi-skilled.

The ALJ then asked the vocational expert a hypothetical question about the claimant's ability to perform work in the national and regional economy. The hypothetical included an individual with the same age, experience, and limited education as the claimant who can occasionally lift and/or carry twenty pounds; can frequently lift and/or carry ten pounds; can sit unlimited hours in a day; can stand and/or walk six out of eight hours in a day; can never climb ladders, ropes, or scaffolds; can never crawl; can occasionally climb ramps, stairs, balance, stoop, crouch, and kneel; must avoid workplace hazards and temperature extremes; can occasionally reach overhead; can frequently reach all other directions with the left upper extremity; can understand, remember, and carry out simple instructions; can maintain concentration and pace for two-hour periods at a time; can have occasional interaction with coworkers; can make simple work-related decisions; can adapt to routine and infrequent workplace changes; and can frequently finger and handle with the left upper extremity. Dr. Green testified that individual could not perform any of the claimant's past work, but could work at light, unskilled jobs such as an inspector, with 800 jobs available in Alabama and 55,000 jobs nationally; a router, with 600 jobs in Alabama and 50,000 nationally; and an assembler, with 2,500 jobs in Alabama and 120,000 nationally. (R. 52-54).

Dr. Green also testified that no jobs would be available for such an individual who could not use her left hand/arm because of pain. (R. 54-57).

*The ALJ Decision*

On August 5, 2015, the ALJ issued a decision finding that the claimant was not disabled under the Social Security Act. (R. 21-32). The ALJ found that the claimant last met the insured status requirements of the Social Security Act on September 30, 2011 and that she had not engaged in substantial gainful activity from her alleged onset date of January 1, 2007 through her date last insured. (R. 23).

The ALJ also found that the claimant had the severe impairments of major depressive disorder, anxiety, hypertension, and reflex sympathetic dystrophy. The ALJ found these impairments constitute more than a slight abnormality and have had more than a minimal effect on the claimant's ability to work. (R. 23).

The ALJ concluded that through September 30, 2011, her date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled a Listing. She noted the claimant's medical history of reflex sympathetic dystrophy, but noted that the record contains no disabling limitations associated with that condition and that her symptoms improved with medication. (R. 26).

The ALJ compared the claimant's mental impairment to Listings §§ 12.02 and 12.04 and found that the claimant did not meet either Listing. The ALJ did not mention or discuss whether the claimant met the requirements of Listing 12.05 involving intellectual disabilities. Regarding her depression, the ALJ found that a "review of the medical evidence shows no professional treatment for anxiety or depression through the date last insured," and that she did not start professional treatment for depression until March 2012 and improved on medication by September 2013. (R. 24, 26).

11

In assessing Dr. Blotcky's diagnosis of depressive disorder and mild mental retardation, the ALJ gave his opinion "no weight" because "his opinion was rendered three (3) years after the date last insured." The ALJ gave no other explanation or reason for disregarding Dr. Blotcky's opinion and did not mention his IQ findings. The ALJ gave state agency psychiatrist Dr. Estock's opinion "some weight" because "evidence received at the hearing level shows that the claimant is more limited in the functional domain of concentration, persistence, and pace." (R. 26).

The ALJ noted the claimant's "Function Report," but did not mention her husband's report. (R. 26).

After indicating that she considered the entire record, the ALJ found that the claimant has the residual functional capacity to perform light work, except that she can lift and carry twenty pounds occasionally and ten pounds frequently; can sit for eight hours in an eight-hour workday; can stand and walk for six hours in an eight-hour workday; can never climb ladders, ropes, scaffolds, but can occasionally climb ramps and stairs; can never crawl; can occasionally balance, stoop, crouch, and kneel; can occasionally reach overhead, but can frequently finger, handle, and reach all other directions with her left upper extremity; must avoid concentrated workplace hazards and extreme temperatures; can understand, remember, and carry out simple instructions; can maintain attention and concentration for two-hour periods at a time; can have occasional interaction with the general public; can have frequent interaction with co-workers; can make simple work-related decisions; and can adapt to routine and infrequent workplace changes. (R. 24-25).

Based on her residual functional capacity determination and the vocational expert's testimony at the hearing, the ALJ found that the claimant could not perform any of her past

12

relevant work, but that jobs existed in significant numbers in the economy that the claimant could perform, including a gasket inspector, a router, and an assembler. Therefore, the ALJ found that the claimant was not under a disability as defined in the Social Security Act.

## VI. DISCUSSION

The claimant argues that the ALJ improperly failed to consider Listing 12.05(C) for "intellectual disability" in light of the claimant's full scale IQ score of 61 assessed by Dr. Blotcky. This court agrees and finds that the ALJ erred by not considering the claimant's presumptive disability under Listing 12.05(C).

If the claimant had a valid Full Scale IQ score of 61 and another physical or mental impairment that significantly affected her ability to work between her onset date of January 1, 2007 through her date last insured of September 30, 2011, she would be presumptively disabled under Listing 12.05(C). However, the ALJ ignored Dr. Blotcky's IQ assessment of the claimant dated October 24, 2014, because he performed the assessment of the claimant three years after her date last insured. However, the ALJ should have *considered* Dr. Blotcky's IQ assessment that post-dated the claimaint's last insured date *if* that assessment would have any bearing on her condition *prior to* September 30, 2011. *See Dye*, 2016 WL 39997245 at *6. Moreover, the ALJ should have adequately explained whether that IQ assessment in 2014 also represented her intellectual capacity prior to her date last insured. *See Fitzgibbon*, 2017 WL 408475 at *6.

The ALJ failed to do either. Instead, the ALJ ignored Dr. Blocky's opinion that the claimant's intellectual disability was a "lifelong condition." As a "lifelong condition," her Full Scale IQ score of 61 would have been her IQ score prior to September 30, 2011, her last date insured. Nothing in the record suggests any intervening cause that would explain a lower IQ

13

score for the claimant after September 30, 2011. If the claimant presents a *valid* IQ score assessed *after* the age of twenty-two, she does not need to present any additional evidence that she manifested deficits in adaptive functioning *prior to* the age of twenty-two; the valid IQ score would be enough. *See Monroe*, 504 F. App'x at 810.

Dr. Blotcky did not suggest that the claimant was untruthful, attempted to embellish her answers to the IQ test, or that the scores underrepresented the claimant's true intelligence level. Although Dr. Blotcky is not a treating physician in the instant case, he actually examined the claimant and is the *only* physician to perform IQ testing. If the ALJ had acknowledged the validity of Dr. Blotcky's IQ assessment for the claimant and considered that Dr. Blotcky found the claimant's intellectual disability to be a "lifelong condition," the ALJ may have given proper weight to Dr. Blotcky's opinion and evaluated the claimant under Listing 12.05(C) for the relevant time period.

In the present case, to meet her burden, the claimant presented valid evidence that she had a Full scale IQ score of 61 within the range of Listing 12.05(C), along with evidence that she only completed eighth grade; has difficulty understanding oral instructions, writing, and reading; cannot handle her financial affairs; and obtained a driver's license only after an oral examination and multiple attempts. Despite this evidence in the record, the ALJ did not even discuss or consider whether the claimant met a Listing under 12.05(C). This failure constituted reversible error.

For these reasons, the court concludes that the ALJ erred as a matter of law, and that the case warrants remand for further proceedings regarding whether the claimant met Listing

12.05(C) for the relevant time period.[4]

## VII. CONCLUSION

For the above reasons, this court concludes that the ALJ failed to apply the proper legal standard by not discussing Listing 12.05(C). Therefore, this court will REVERSE and REMAND the Commissioner's decision for the ALJ to determine whether the claimant is entitled to disability consistent with this opinion.

The court will enter a separate Order in accordance with this Memorandum Opinion.

DONE and ORDERED this 12th day of February, 2018.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] On remand, if necessary, the court urges the ALJ to re-assess the claimant's ability prior to her date last insured to frequently finger and handle with her left hand, given her severe impairment of reflex sympathetic dystrophy.